# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVELERS PROPERTY CASUALTY** | **CIVIL ACTION** |
| **COMPANY OF AMERICA, ET AL.,** | |
|     **Plaintiffs,** | |
| | |
| **VERSUS** | **No. 14-2176** |
| | |
| **BRIAN C. BOSSIER, ET AL.,** | **SECTION "E"(5)** |
|     **Defendants,** | |

## ORDER AND REASONS

Before the Court is the "Motion for Summary Judgment,"[1] as well as the "Second Motion for Summary Judgment"[2] filed by Defendants, Blue Williams, LLC, Richard L. Olivier, and Brian C. Bossier (collectively "Blue Williams").[3] Plaintiffs, Travelers Property Casualty Company of America and St. Paul Fire & Marine Insurance Company (collectively "Travelers") timely opposed both motions.[4] The Court granted Blue Williams leave to file two supplemental memoranda supporting its first summary judgment motion.[5] The Court also granted Travelers leave to file two supplemental memoranda in opposition.[6]

On June 6, 2016, the deadline for supplemental briefing on the first motion for summary judgment, Blue Williams filed its second motion for summary judgment.[7] Finding Blue Williams' argument in its second motion for summary judgment to be closely related to an argument raised in its first, the Court expedited the submission date

---

[1] R. Doc. 111.
[2] R. Doc. 171.
[3] There are several other pending motions, which, for the reasons stated herein, the Court will dispose of as moot.
[4] R. Doc. 117 & 196.
[5] R. Docs. 134 & 174.
[6] R. Docs. 152, &173.
[7] R. Docs. 158 & 171.

for the second motion and set both motions for oral argument on June 15, 2016.[8] The Court advised the parties they would be free to request leave to file post-hearing memoranda following oral argument, if appropriate.[9] At oral argument, the Court advised the parties that it did not view Blue Williams' second motion for summary judgment as a proper motion for summary judgment, but instead as a supplemental memorandum elaborating on an argument raised in the first motion for summary judgment. Neither party sought leave to file a post-hearing memorandum after oral argument.[10]

The Court now rules on Blue Williams' first motion for summary judgment; however, in so doing considers the arguments raised in Blue Williams' second motion for summary judgment. Upon consideration of the arguments of the parties, the record, and the applicable law, the Court grants Blue Williams' first motion for summary judgment and dismisses the instant action with prejudice.

## I. Background

This is a legal malpractice action, arising out of a group of consolidated state-court personal injury cases ("the Marable litigation").[11] In the Marable litigation, a group of plaintiffs ("the Marables") sought recovery for severe personal injuries related to a May 2012 semi-tractor trailer truck accident.[12] Travelers hired Blue Williams in November 2012 to represent two of its insured (collectively referred to as "Empire"), defendants in the Marable litigation.[13] The Marables alleged that Empire had recently performed service

---

[8] R. Doc. 176.

[9] R. Doc. 194.

[10] The Court notes that the originally noticed submission date on Blue Williams' second motion for summary judgment has passed and that, while Travelers has sought leave to amend its witness and exhibit list, Travelers has not sought leave to file a post-hearing memorandum. *See* R. Doc. 171-5.

[11] R. Doc. 111-1; R. Doc. 117-2.

[12] *Id.* "[Mrs.] Marable was run over by her husband's semi-tractor trailer truck in a Lowe's parking lot in New Orleans East." *Id.*

[13] *Id.*

and repair work on the truck and failed to properly diagnose or repair the truck.[14] Empire had performed the work on the truck under a service ticket containing an arbitration clause.[15]

On September 19, 2013, the state-court judge presiding over the Marable litigation, Judge Griffin, entered a scheduling order detailing certain pretrial deadlines and setting the trial for February 3, 2014.[16] The order stated that "[a]ll discovery is to be completed on or before January 3, 2014," though the parties do not apparently dispute that the "agreed discovery deadline" was actually January 6, 2014.[17] Under a heading titled "Witnesses," the order also provided "Expert reports: See LA. CCP Article. 1425 (c)."[18]

Louisiana Code of Civil Procedure Article 1425(C) reads:

> If the court orders the disclosures of Paragraph B of this Article, they shall be made at the times and in the sequence directed by the court. In the absence of directions from the court or stipulation by the parties, the disclosures ordered pursuant to Paragraph B of this Article shall be made at least ninety days before the trial date or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Paragraph B of this Article, within thirty days after the disclosure made by the other party. The parties shall supplement these disclosures when required by Article 1428.

Paragraph B of Article 1425 reads:

> Upon contradictory motion of any party or on the court's own motion, an order may be entered requiring that each party that has retained or specially employed a person to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony provide a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information

---

[14] *Id.*; *see also* R. Doc. 37 at 6.

[15] R. Doc. 117-33 at 3.

[16] R. Doc. 111-1; R. Doc. 117-2; R. Doc. 111-6. This appears to have been the second scheduling order entered in the case. *See* R. Doc. 117-4. The first scheduling order appears to have had the same expert witness language as the September 19, 2013, order. *Id.*

[17] *Id.* at 3; R. Doc. 117-2 at 4.

[18] R. Doc. 111-6 at 2. Although the parties refer to the subsection of the article as "1425(c)," in reality the correct citation is 1425(C).

considered by the witness in forming the opinions. The parties, upon agreement, or if ordered by the court, shall include in the report any or all of the following: exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

The state-court scheduling order contained no discussion of expert reports beyond the unelaborated reference to Article 1425(C).[19]

On December 9, 2013, Empire, through Blue Williams, filed a motion to continue the trial date.[20] In the motion, Blue Williams argued that discovery was ongoing and could not be completed in time for trial.[21] Blue Williams further asserted that numerous experts would be necessary and contended that the Marables had failed to timely produce three of their expert reports.[22] Blue Williams argued that the Marables' failure to timely produce the reports was "in direct contradiction of the Court's Pre-Trial Order, and as mandated by law – Civil Code of Procedure Article 1425 (c) which requires their production no later than ninety (90) days prior to trial [, November 3, 2013]."[23]

At a hearing on the motion to continue on January 10, 2014, Judge Griffin stated, "I'm not inclined to continue the trial. I will however ask that the lawyers be prepared to participate in a status conference . . . so that I can find out where you are at that point."[24] Judge Griffin later stated, "I'm not saying that you guys have run into issues and problems throughout the course of this, I have some concerns, but I'm not inclined to continue it at

---

[19] *See generally* R. Doc. 111-6.
[20] R. Docs. 111-1 & 117-2; R. Doc. 111-8.
[21] R. Doc. 111-8.
[22] *Id.*
[23] *Id.* at 6.
[24] R. Doc. 111-11 at 13.

this juncture."[25] Judge Griffin set a status conference for January 24, 2016.[26] Also on January 10, 2014, Travelers requested from Blue Williams a trial evaluation report.[27]

On January 13, 2014, the Marables produced a "supplemental Life Care Plan," increasing their stated value of care for the severely injured Marable plaintiff from $5.6 million to $20 million.[28] That day, Blue Williams produced the requested trial evaluation report, which recommended that Travelers attempt to settle the case for between $6 million and $7 million, but noted that it did "not contemplate plaintiffs' amended Life Care Plan received today."[29] The parties dispute the date the Marables produced the Miller Report to Blue Williams, with Blue Williams citing to evidence indicating that it did not receive a version of the Miller Report with all attachments until December 12, 2013,[30] and Travelers citing to evidence indicating that Blue Williams had possession of at least the body of the Miller Report no later than October 23, 2013.[31] The parties apparently agree that on January 13, 2014, Blue Williams produced to the Marables three expert rebuttal reports by John Cunag, Peter Sullivan, and Jack Wentzell (the "Empire rebuttal reports") to a Marables liability expert report written by Charlie Miller ("the Miller Report").[32]

---

[25] *Id.* at 14.
[26] *Id.* at 14–16.
[27] R. Docs. 111-1 & 117-2.
[28] *Id.*
[29] R. Docs. 111-1 & 117-2; R. Doc. 111-14 at 12.
[30] R. Doc. 117-9 at 68–70; R. Doc. 117-18.
[31] R. Doc. 117-39 (version of Miller Report in possession of Blue Williams counsel on October 23, 2013).
[32] *See* R. Docs. 117 at 10 & 134 at 5; R. Doc. 117-20; R. Doc. 111-25 at 2.

One day later on January 14, 2014, Travelers terminated Blue Williams and soon after hired replacement counsel for Empire.[33] On January 20, 2014, the Marables and Empire, through replacement counsel, scheduled a mediation for January 27, 2014.[34]

On January 24, 2014, Judge Griffin, in an open court proceeding, granted motions for summary judgment dismissing the two other corporate defendants in the Marable litigation.[35] At that same proceeding, counsel for the Marables advised Judge Griffin that they would file an expedited motion to strike Travelers'[36] liability experts because their rebuttal reports were untimely produced.[37] The next day, Empire's replacement counsel produced a memorandum to a representative of Travelers expressing their opinion that Blue Williams received the Miller Report in August 2013, that the 30-day rebuttal deadline of Article 1425(C) applied, and that Blue Williams untimely produced the Empire rebuttal reports to the Miller Report on January 13, 2016.[38]

On January 27, 2014, the scheduled mediation occurred and Travelers agreed to settle the Marable litigation for $13,750,000.[39] The Marables' motion to strike the three experts had been set for hearing on January 28, 2014, but was never heard or decided.[40]

Travelers filed the instant suit on September 22, 2014, alleging that Blue Williams committed legal malpractice by failing to timely submit expert rebuttal reports and that

---

[33] R. Docs. 111-1 & 117-2. It does not appear on the record that Travelers decision to terminate Blue Williams was motivated by Blue Williams' production of the Empire rebuttal reports or the Marables' motion to strike experts for untimely production of reports discussed in the paragraphs below.

[34] *Id.*

[35] *Id.*; R. Doc. 111-21.

[36] The Court acknowledges that, at this point in the Marable litigation, the witnesses were actually Empire's; however, the Court refers to the experts as belong to Travelers for consistency and ease of reference.

[37] R. Doc. 111-21.

[38] R. Doc. 111-25.

[39] R. Docs. 111-1 & 117-2.

[40] There appear to have been at least a few other pending motions at the time Travelers settled, including a motion in limine to strike the Marables' supplemental life care plan (R. Doc. 117-29 at 182) and a *Daubert* motion to strike the author of the Miller Report (R. Doc. 117-38 at 6).

Blue Williams breached its contract with Travelers.[41] On January 22, 2015, Travelers moved for leave to file an amended complaint.[42] The assigned magistrate judge granted the motion for leave on February 10, 2015.[43] The amended complaint added a third claim that Blue Williams committed legal malpractice by failing to adequately review and discuss an arbitration clause contained in the service ticket covering Empire's work on the truck involved in the accident.[44]

## II. Arguments of the Parties

A. Blue Williams' Summary Judgment Arguments

*i. Untimely Expert Reports*

Blue Williams argues it is entitled to summary judgment on Travelers' untimely production claim on three grounds. First, Blue Williams argues it was not negligent, because Judge Griffin's scheduling order did not order disclosure of expert reports under Article 1425(B) and, as a result, Article 1425(C)'s 30-day rebuttal deadline did not apply.[45] Blue Williams argues that Judge Griffin's scheduling order merely referred the parties to Louisiana Civil Code of Procedure 1425(C), which does not require expert reports absent a separate court order.[46] Because no party at any point moved for an order requiring disclosure of expert reports under Article 1425(B), and the court did not *sua sponte* order disclosure, Blue Williams argues it had no duty to produce expert reports, or to produce them on a certain timeline.[47] Blue Williams also argues that it did not receive a final version of the Miller Report until 30 days before Blue Williams produced the Empire

---

[41] R. Doc. 1.
[42] R. Doc. 26.
[43] R. Doc. 36.
[44] R. Doc. 37.
[45] R. Doc. 111-2 at 16–17.
[46] *Id.*
[47] *Id.*

rebuttal reports on January 13, 2014, meaning its production was timely even if Article 1425(C) did apply.[48]

Second, Blue Williams contends that Travelers' theory of causation is too speculative to support a malpractice claim under Louisiana law.[49] Blue Williams emphasizes that the state trial court never heard the Marables' motion to strike Travelers' experts, much less actually struck the experts.[50] In its second motion for summary judgment, Blue Williams supplemented this argument by asserting that Louisiana malpractice law requires Travelers to show not only that Blue Williams' alleged negligence caused them "some loss," but also that the outcome of the Marable litigation more likely than not would have been favorable to Travelers but for Blue Williams' alleged negligence (often described as the "case within a case doctrine").[51] Blue Williams argues the summary judgment evidence and witness and exhibit list submitted by Travelers demonstrate that, at trial, Travelers will not be able to prove the Marable litigation would have resulted in a favorable outcome to Travelers but for Blue Williams' alleged negligence.[52]

Third, Blue Williams argues that Travelers' failure to defend against the motion to strike in the Marable litigation constituted a failure to mitigate damages as required under Louisiana law.[53] Blue Williams also argues that Louisiana malpractice law recognizes a form of equitable estoppel triggered by a malpractice plaintiff's decision to settle rather than exhaust judicial remedies by challenging the Marables' motion to strike or challenging it on appeal had the motion been granted by Judge Griffin.[54]

---

[48] R. Doc. 172 at 3.
[49] R. Doc. 111-2 at 17–22.
[50] *Id.* at 19.
[51] *See generally* R. Doc. 171-4.
[52] *Id.* at 7–9.
[53] R. Doc. 111-2 at 22–27.
[54] *Id.*

### ii. Failure to Arbitrate

Similar to its causation argument regarding Travelers' untimely production claim, Blue Williams argues that Travelers' theory of causation on its failure to arbitrate claim is overly speculative.[55] Blue Williams also argues Travelers' failure to arbitrate claim is perempted under Louisiana law.[56] Finally, Blue Williams argues that Travelers did not amend its complaint to add the arbitration claim until after the applicable one-year peremption period passed and Federal Rule of Civil Procedure Rule 15(c)'s relation-back provision does not apply.[57] Specifically, Blue Williams argues both that Rule 15(c)'s relation-back provision does not apply, because Travelers' initial complaint did not put Blue Williams on sufficient notice of the arbitration claim, and that Rule 15(c) cannot apply, because Louisiana's claim peremption laws are substantive in nature.[58]

### iii. Breach of Contract

Blue Williams argues an attorney may only be liable for breaching a legal representation contract when the attorney provides an express warranty as to a specific result or agrees to undertake the representation and does nothing.[59] Blue Williams argues that the allegations of Travelers' complaint alone show that Blue Williams did more than nothing.[60] Furthermore, Blue Williams notes there is no language in the contractual language cited by Travelers in its complaint establishing Blue Williams made an express warranty as to a specific result.[61]

---

[55] *Id.* at 27.
[56] *Id.* at 28–29.
[57] *Id.*; *see also* R. Docs. 134 at 8–9. & 172 at 6–7.
[58] *Id.*
[59] R. Doc. 111-2 at 29.
[60] *Id.*
[61] *Id.*

## B. Travelers' Opposition

### i. Untimely Expert Reports

Travelers' opposes Blue Williams' arguments regarding negligence, causation, and mitigation of damages. As to negligence, Travelers asserts it has come forward with evidence showing Blue Williams counsel knew the 30-day expert rebuttal deadline of Article 1425(C) applied and represented as much both to Travelers in emails and to Judge Griffin in its December 9, 2013, motion to continue.[62] Furthermore, Travelers asserts that counsel for Blue Williams concede they received a signed version of the Miller Report no later than October 22, 2013, meaning Blue Williams knew it was untimely in producing the Empire rebuttal reports on January 13, 2014.[63]

As to causation, Travelers argues Louisiana malpractice law no longer imposes the "case within a case" burden on malpractice plaintiffs meaning Travelers need only show that Blue Williams' alleged negligence caused it some loss.[64] Furthermore, Travelers argues that, even if the "case within a case doctrine" still exists in some cases, it is inapplicable under Louisiana law in this case because Travelers has demonstrated that Blue Williams was clearly negligent.[65] As emphasized by counsel for Travelers at oral argument, Travelers asserts that—at a minimum—it has put forward sufficient evidence that but for Blue Williams' alleged negligence Travelers would have been able to settle the case for less than it did and that this is sufficient evidence of causation.[66] Travelers argues further that the evidence it has presented demonstrates Judge Griffin was reasonably likely to grant the motion to strike and that the loss of rebuttal experts would strip

---

[62] R. Doc. 117 at 17–19.
[63] *Id.*; *see also* R. Docs.152 at 3–5 & 173 at 4–5.
[64] *Id.*; *see also* R. Doc. 152 at 5–7; *see also generally* R. Doc. 196.
[65] *Id.*
[66] *Id.*

Travelers of the ability to discredit the Marables experts, thereby also stripping Travelers of the means to demonstrate that the Marables' theory of how Empire was liable was without merit.[67] Travelers asserts it has identified documents and witness testimony that will allow it to meet even the "case within a case" burden at trial, if necessary.[68]

Finally as to mitigation of damages and possible equitable estoppel, Travelers contends the applicable standard to be applied is whether a reasonably prudent actor in Travelers' situation would have settled prior to Judge Griffin's decision on the motion to strike Travelers' experts.[69] Travelers asserts that it has come forward with sufficient evidence demonstrating that it was reasonable in deciding to settle the case rather than face the risk going to trial without rebuttal experts.[70]

*ii. Failure to Arbitrate*

Travelers argues its failure to arbitrate claim survives summary judgment both because causation is not too speculative and because the claim is not perempted.[71] Travelers argues Blue Williams' failure to pursue arbitration stripped it of a defense and that it has come forward with expert legal testimony supporting the conclusion that the failure to arbitrate substantially increased Travelers' litigation costs and liability exposure.[72] Travelers further argues the amended complaint adding its failure to arbitrate claim relates back to its first complaint under Rule 15(c), because both the initial and

---

[67] *Id.*

[68] R. Doc. 196 at 12–15. The Court notes that an examination of Travelers' timely filed witness list does not support the conclusion that Travelers was prepared to call the fact witnesses and experts necessary to testify as to the events and circumstances underlying the Marable litigation. *See* R. Doc. 131. Other than attorneys and claims handlers involved in the Marable litigation, the witness list includes only three individuals associated with "Empire Truck Sales" and a broad designation for "[a]ny and all other individuals involved in the underlying matter forming the basis of this litigation." *See id.* at 2. Such an omnibus reference is not sufficient to comply with the Court's pretrial instructions.

[69] *Id.*; *see also* R. Doc. 173 at 2–4.

[70] *Id.*

[71] R. Doc. 117 at 26–29; *see also* R. Docs. 152 at 9–10 & 196 at 11–12.

[72] *Id.*

amended complaint relate to Blue Williams' representation of Travelers and Rule 15(c)'s relation back provision is applied liberally.[73] Travelers argues district courts have already analyzed the substantive nature of Louisiana peremption and Rule 15(c) and concluded that Rule 15(c)'s relation back provision controls in cases like this.[74]

### iii. Breach of Contract

Travelers contends its contract with Blue Williams contained a specific reporting obligation, the breach of which supports a breach of contract claim not covered by tort law.[75] Specifically, Travelers asserts Blue Williams breached its contract with Travelers by failing to timely produce the rebuttal reports, failing to provide monetary exposure analysis until the eve of trial, and failing to advise Travelers of an arbitration defense.[76] Travelers also argues Blue Williams' lack of an express warrant argument is untimely, because Blue Williams did "not raise [the] alleged failure to state a claim prior to answering" so "the defense is lost."[77]

## III. Legal Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56; s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co.*

---

[73] *Id.*
[74] *Id.*
[75] R. Doc. 117 at 29.
[76] *Id.* (citing Rec. Doc. 117-34 at 7–8).
[77] R. Doc. 117 at 29.

*v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence on its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine factual dispute exists. *See id.* at 324; *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (internal quotation omitted) (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

Though all reasonable inferences are drawn in favor of the non-moving party, conclusory allegations, denials, improbable inferences, unsubstantiated assertions, speculation, and legalistic argumentation do not adequately substitute for specific facts showing a genuine factual issue for trial. *Little*, 37 F.3d at 1075 (5th Cir. 1994); *TIG Ins.*, 276 F.3d at 759 (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

## IV. Law & Analysis

### A. Did Blue Williams Commit Malpractice by Producing Rebuttal Expert Reports in an Untimely Manner?

In order to assert a cognizable Louisiana malpractice claim, at trial a plaintiff must convince a reasonable trier of fact of the following: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *MB Indus., LLC v. CAN Ins. Co.*, 2011-0303 (La. 10/25/11); 74 So.3d 1173, 1184. In this case, it is undisputed that an attorney-client relationship existed between Blue Williams and Travelers. Blue Williams as the movant for summary judgment argues there are no disputed issues of material fact with respect to the second and third elements of the claim for malpractice, the evidence in the record is insufficient for Travelers to

establish those elements at trial, and as a result Blue Williams is entitled to judgment as a matter of law that it did not commit malpractice.  The Court finds that Travelers, as the non-movant with the burden of proof at trial, has come forward with sufficient evidence to establish there are disputed questions of mixed fact and law with respect to Blue Williams' negligence. Summary judgment is nevertheless appropriate because Travelers' burden is to establish all three prongs of the analysis. Travelers has failed to come forward with evidence to show that a specific factual dispute exists with respect to causation and, under those undisputed facts, Blue Williams is entitled to judgment as a matter of law that it did not commit malpractice.

*i. Negligence*

Blue Williams argues the undisputed facts show that: 1) Judge Griffin's scheduling order did not require disclosure of expert reports pursuant to Article 1425(B), meaning the disclosure timelines of Article 1425(C) did not apply; and 2) even if Article 1425(C) did apply, Blue Williams did not receive a final version of the Miller Report until December 12, 2013, and thereafter timely disclosed the rebuttal expert reports. Arguing that there are no disputed issues of material fact with respect to the second prong of Travelers' malpractice claim, Blue Williams believes it is entitled to judgment as a matter of law because the evidence in the record is insufficient for Travelers to establish the negligence prong of the malpractice analysis. Travelers counters that it has come forward with evidence showing Blue Williams' counsel knew the 30-day expert rebuttal deadline of Article 1425(C) applied and represented as much both to Travelers in emails and to Judge Griffin in its December 9, 2013, motion to continue.[78] Furthermore, Travelers

---

[78] R. Doc. 117 at 17–19.

asserts that counsel for Blue Williams concede they received a signed version of the Miller Report no later than October 22, 2013, meaning Blue Williams knew it was untimely in producing the Empire rebuttal reports on January 13, 2014.[79]

Based on the evidence in the record, it is unclear whether Article 1425(C) applied. The scheduling order's bare reference to Article 1425(C) could be interpreted as an order requiring disclosure of expert reports under Article 1425(B) with the attendant timelines in Article 1425(C). On the other hand, the scheduling order could be read as requiring the parties to file a motion requesting the court to require disclosure of expert reports as allowed by Article 1425(B).[80] Likewise, the factual record is unclear on whether the version of the Miller Report received by counsel for Blue Williams before December 13, 2013, was sufficient to trigger the 30-day rebuttal report timeline, even assuming the scheduling order required disclosure of expert reports under Article 1425(B) with the attendant timelines in Article 1425(C).

To determine whether Blue Williams committed malpractice by breaching the applicable standard of care, the trier of fact would need to know the standard of care for attorneys in New Orleans under these circumstances. *See Brennan's*, 2016 WL 1449334 at *2. With respect to this issue, Blue Williams argues that Judge Griffin would not have struck its experts citing cases supporting the proposition that striking expert witnesses for non-compliance with a pre-trial order is disfavored as overly "draconian," particularly where it is the attorney and not the party responsible for the non-compliance.[81] Blue

---

[79] *Id.*; *see also* R. Docs.152 at 3–5 & 173 at 4–5.
[80] Upon agreement of the parties or at the instigation of the court, an order may be entered under Article 1425(B) requiring the party disclosing its expert report to also disclose all exhibits the expert used to form the opinions, as well as details regarding the expert's qualifications and past court appearances. *See* LA. CODE CIV. P. art. 1425(B).
[81] R. Doc. 111-2 at 21–22.

Williams also includes minutes from a later proceeding in the Marable case (that is, after Travelers settled) in which Judge Griffin indicated that she was not likely to "jam" attorneys, so long as they did not jam each other.[82] Blue Williams also points to emails in which the Marables' attorneys and Blue Williams apparently agreed to keep exchanging discovery despite deadlines in the scheduling order.[83] Finally, Blue Williams points to the deposition testimony of Rico Alvendia—counsel for the Marables in the underlying litigation—who testified it was highly unlikely the motion to strike would have been granted, stating that "although I would have liked it to have been granted, I don't think I've ever seen in practicing for 17 years a judge strike all of the defense witnesses, expert witnesses."[84] In response, Travelers' summary judgment evidence consists almost entirely of unsubstantiated legal opinions of its replacement counsel, opinions of legal experts hired to opine in hindsight on what the judge would have decided,[85] the Blue Williams trial evaluation report, and the testimony of the representative of Travelers, which is the entity that decided to settle the case.[86] Counsel in the Marable litigation's conflicting opinions regarding the interpretation of the scheduling order and how Judge Griffin would have ruled on the motion to strike the rebuttal expert reports cannot resolve the disputes over Judge Griffin's intent as to what the scheduling order required.[87] As a

---

[82] R. Doc. 111-30 at 6–8 ("And my theory about trying a case especially when you have this many lawyers and again if you tried cases [] in front of me you know that as long as you all are willing to work with each other even when you miss a deadline and order I am not going to jam you, if you're not jamming each other. The issue is when you start jamming each other I have to do the double edge sword, what's good for the good is good for the gander, that's how it is. The only thing I'm really a jerk about, and ya'll know this, is a trial date").

[83] R. Doc. 111-9.

[84] R. Doc. 111-19 at 15. Alvendia further stated that a ruling that struck Travelers' experts would have been "extremely drastic and prejudicial," is "not favored by our district courts," and that he didn't "think that this particular judge would have actually struck the witnesses." *Id.*

[85] The Court emphasizes that Travelers' legal experts would be excluded from opining on anything other than the applicable standard of care at trial.

[86] *See* R. Doc. 117 at 19–23; R. Doc. 152 at 5–7; R. Doc. 173 at 3; R. Doc. 196 12–14.

[87] The Court notes that the parties' respective references to the deposition testimony of legal experts has no bearing on the Court's determination of the issue. As will be discussed later, legal experts may testify as to

result, the unsubstantiated opinions of the legal experts put forward by the parties do not provide the Court with a sufficient basis to determine the applicable standard of care and whether it was violated by Blue Williams.

The applicable standard of care for this malpractice claim has not been established. *See Brennan's Inc. v. Colbert*, 2015-0325 (La. App. 4 Cir. 4/13/16); 2016 WL 1449334 (not yet published); *see also Frisard v. State Farm Fire and Cas. Co.*, 2006-2353 (La. App. 1 Cir. 11/2/07); 979 So.2d 494, 497. While courts sometimes exercise their own judgment to determine the applicable standard of care because the negligence is so apparent so as to negate the need for the plaintiff to establish the standard of care, that is not the case here. S*ee also SCB Diversified Mun. Portfolio v. Crews & Assoc.*, Civ. A. No. 09-7251, 2012 WL 13708 at *5 (E.D.La. Jan. 4, 2012); *Scheslinger v. Herzog*, 95-1127 (La. App. 4 Cir. 4/3/96); 672 So.2d 701-708.

Based on a review of Judge Griffin's scheduling order and Article 1425, and the summary judgment evidence put forth by Travelers, the Court finds that disputed questions of mixed law and fact exist with respect to whether Article 1425(C) did or did not apply and whether the version of the Miller Report received before December 13, 2013 was sufficient to trigger the 30-day rebuttal report period. To answer these questions, the Court would have to speculate as to Judge Griffin's understanding of whether the scheduling order triggered the written report requirement in Article 1425(B) and, if so, whether she intended Article 1425(C)'s rebuttal report deadline to be triggered by an expert report without exhibits attached. Questions about Judge Griffin's intent when she entered the scheduling order referencing Article 1425 create disputed mixed questions of

---

the applicable standard of care for a legal malpractice claim, *see Brennan's Inc. v. Colbert*, 2015-0325 (La. App. 4 Cir. 4/13/16) (not yet published), but the Court rejects any contention that a legal expert may opine in hindsight on how a judge would have ruled on an undecided motion.

fact and law that cannot be disposed of on summary judgment.[88] Further complicating the analysis, if Judge Griffin intended for the scheduling order to require the parties to the Marable suit to file written expert reports at least ninety days before the trial date, and rebuttal reports within thirty days thereafter, the standard of care would be different than if she did not. Not surprisingly, the parties have not come forward with deposition testimony of Judge Griffin as to her intent and understanding regarding the scheduling order. Without this information, questions of fact and law remain unresolved and it is impossible to determine the applicable standard of care and whether Blue Williams breached that standard of care on summary judgment.

Nevertheless, this unsettled issue of negligence does not preclude summary judgment on Travelers' malpractice claim. Travelers has the burden of proving all three elements of the malpractice claim analysis, and Travelers has not come forward with record evidence to show there are disputed issues of fact with respect to the causation prong of the analysis or that, on the evidence, Blue Williams is not entitled to judgment as a matter of law.

*ii. Causation*

To prevail on summary judgment, Blue Williams must establish there are no disputed issues of material fact with respect to the causation prong and the material facts in the record are insufficient for Travelers to establish this element at trial. As Blue Williams correctly notes, it is an undisputed fact that the state trial court never heard the

---

[88] Judge's Griffin intent with regard to the scheduling order is a mixed question of fact and law. *Cf. Alpaugh v. Continental Ins. Co.*, 2001-0101 (La. 6/29/01); 791 So.2d 71, 74 (interpretation of insurance agreement involving questions of party intent presents mixed questions of fact and law); *O'Neill v. Thibodeaux*, 97-1065 (La. App. 3 Cir. 3/6/98); 709 So.2d 962, 974 (issue of parties' intent concerning a contract is mixed question of law and fact).

Marables' motion to strike Travelers' experts and never struck them.[89] As a result, Blue Williams argues Travelers will not be able to prove causation at trial because its theory of causation is too speculative.[90] Furthermore, Blue Williams argues that Louisiana malpractice law requires Travelers to show not only that Blue Williams' alleged negligence caused them "some loss," but also to show that the outcome of the Marable litigation more likely than not would have been favorable to Travelers but for Blue Williams' alleged negligence (often described as the "case within a case doctrine").[91] Blue Williams argues the summary judgment evidence and witness and exhibit list submitted by Travelers demonstrate that at trial Travelers will not be able to prove the Marable litigation would have resulted in a favorable outcome to Travelers but for Blue Williams' alleged negligence.[92]

Travelers responds that Louisiana malpractice law no longer imposes the "case within a case" burden on malpractice plaintiffs meaning Travelers need only show that Blue Williams' alleged negligence caused it some loss.[93] Furthermore, Travelers argues that, even if the "case within a case doctrine" still exists in some cases, it is inapplicable under Louisiana law in this case because Travelers has demonstrated that Blue Williams was clearly negligent.[94] Travelers asserts that—at a minimum—it has put forward sufficient evidence that but for Blue Williams' alleged negligence, Travelers would have been able to settle the case for less than it did and that this is sufficient evidence of causation.[95] Travelers argues further that the evidence it has presented demonstrates

---

[89] *Id.* at 19.
[90] R. Doc. 111-2 at 17−22.
[91] *See generally* R. Doc. 171-4.
[92] *Id.* at 7−9.
[93] *Id.*; *see also* R. Doc. 152 at 5−7; *see also generally* R. Doc. 196.
[94] *Id.*
[95] *Id.*

Judge Griffin was reasonably likely to grant the motion to strike and that the loss of rebuttal experts would strip Travelers of the ability to discredit the Marables' experts, thereby also stripping Travelers of the means to demonstrate that the Marable's theory of Empire's liability was without merit.[96] Travelers asserts it has identified documents and witness testimony that will allow it to meet even the "case within a case" burden at trial, if necessary.

Travelers relies on a line of cases stemming from the Louisiana Supreme Court's decision in *Jenkins v. St. Paul Fire & Marine Insurance Co.* to support its argument that it will not be required to prove the Marable case within its malpractice case. Those cases, however, only apply where a malpractice plaintiff makes a prima facie case by showing clear negligence and, even then, do not relieve the plaintiff of proving the malpractice caused the unfavorable outcome of the litigation.

In *Jenkins*, the Louisiana Supreme Court held that a malpractice plaintiff's burden to prove causation under the case within a case doctrine is lightened when a court can determine that both an attorney-client relationship existed and there was clear negligence by the attorney. *See* 81-C-0776 (La. 10/1/85); 422 So.2d 1109, 1110. In the *Jenkins* case, the defendant attorneys conceded they had been negligent in not timely filing the underlying suit. *Id.* Thus, there was clear negligence. The *Jenkins* court reasoned that:

> Causation, of course, is an essential element of any tort claim. However, once the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit. In such a situation, a rule which requires the client to prove the amount of damages by trying the "case within a case" simply imposes too great a standard of certainty of proof. Rather, the more logical approach is to impose on the negligent attorney, at this point in the trial, the burden

---

[96] *Id.*

> of going forward with evidence to overcome the client's prima facie case by
> proving that the client could not have succeeded on the original claim, and
> the causation and damage questions are then up to the jury to decide.
> Otherwise, there is an undue burden on an aggrieved client, who can prove
> negligence and causation of some damages, when he has been relegated to
> seeking relief by the only remedy available after his attorney's negligence
> precluded relief by means of the original claim.

*Id.* Under *Jenkins*, when a prima facie case of clear negligence has been proven, the burden of proof shift to the negligent attorney to prove that the client could not have succeeded on the underlying claim.

The Louisiana Supreme Court has clarified the principles laid out in *Jenkins*. *See, e.g.*, *MB Indus. v. CAN Ins. Co.*, 2011-0303 (La. 10/25/11); 74 So.3d 1173, 1184. In *MB Industries*, the malpractice plaintiff alleged its attorney committed negligence by a variety of misconduct, including the failure to timely amend a petition to add viable claims, the loss of a box of important documents, and failing to seek a protective order on some of the lost documents. *Id.* at 1178. The *MB Industries* court emphasized that, regardless of whether the showing of negligence is clear, "it is not enough to simply show" negligence. *Id.* at 1187. The malpractice plaintiff:

> must also introduce evidence of causation and "[a]lthough this Court
> disavowed the 'case within a case' doctrine in *Jenkins* . . . we reiterated that
> causation 'is an essential element of any tort claim.' At the very least, [the
> malpractice plaintiff] must establish some causal connection between the
> alleged negligence and the eventual unfavorable outcome of the litigation.

*Id.*

A survey of post-*Jenkins* and *MB Industries* persuasive authority supports the conclusion that a malpractice plaintiff only gains the benefit of *Jenkins* burden shifting upon establishing a prima facie case of clear negligence and that, regardless of whether *Jenkins* applies, a malpractice plaintiff always carries the threshold burden of establishing some causal connection between the alleged negligence and the unfavorable

outcome of the litigation. *See, e.g.*, *Colonial Freight Sys., Inc. v. Adams & Reese, L.L.P.*, 524 Fed.Appx. 142 (5th Cir. 2013) ("if a malpractice plaintiff offers only a speculative theory of loss causation, the defendant is entitled to judgment as a matter of law").

It is obvious that Travelers has not made a prima facie showing of clear negligence in this case. Because Travelers has not established that Blue Williams was clearly negligent, Travelers' causation burden is far greater than merely establishing that it suffered "some loss" as a result of Blue Williams' alleged negligence. *See MB Indus.*, 74 So.3d at 1186–87. Even assuming Travelers had established Blue Williams' negligence, *MB Industries* would require Travelers to prove causation by showing the result would have been different in the underlying case but for Blue Williams' malpractice, meaning that Travelers more likely than not would have prevailed at the Marable trial had it been able to use its rebuttal experts.

Travelers has no admissible evidence to show how Judge Griffin would have ruled on the motion to strike. Even assuming Judge Griffin would have struck the experts, Travelers has put forward scant, if any, evidence demonstrating how Judge Griffin's ruling would have impacted the outcome of the case. For instance, even had Judge Griffin taken the "draconian" measure of precluding the Empire rebuttal experts from testifying at trial, it is not clear on the record that replacement counsel for Travelers would have been unable to defeat the credibility of Miller's testimony through cross-examination. The summary judgment evidence presented by Travelers falls far short of demonstrating that Travelers could meet its causation burden of proof at trial. Travelers apparently recognizes this because it has filed two separate motions[97] to amend its witness and

---

[97] See R. Doc. 197 & 218.

exhibit lists well after the deadline passed.[98] Even were the Court to permit the amendments, Travelers has not come forward with adequate summary judgment evidence to demonstrate it will be able to establish causation at trial. The Court therefore concludes that, as a matter of law, Travelers will not be able to show causation at trial thus entitling Blue Williams to summary judgment that it did not commit malpractice.

Before proceeding to Travelers' remaining claims, the Court quickly addresses Travelers central argument regarding causation. In its memoranda and more explicitly at oral argument, counsel for Travelers has put forward the argument that its causation burden is to show that the Marables' motion to strike was the cause of Travelers settling for an amount greater than it would have had the motion not been filed as a result of Blue Williams' alleged negligence. Seeming to conflate the applicable standard for mitigation of damages and/or equitable estoppel with the applicable burden of proof of causation, Travelers has also repeatedly insisted that the key inquiry is whether Travelers was reasonable to settle in light of the motion to strike being filed, though not heard or ruled upon.[99]

Such an understanding of Travelers' causation burden relies heavily on *Braud v. New England Insurance Co.*. CA-8487 (La. App. 4 Cir. 10/11/88); 534 So.2d 13. In *Braud*, the defendant attorney in the underlying state court litigation obtained a default judgment for the malpractice plaintiff. *Id.* at 14. When the defendant attorney attempted

---

[98] R. Doc. 196 at 12–15. The Court notes that an examination of Travelers' timely filed witness list does not support the conclusion that Travelers was prepared to call the fact witnesses and experts who would have testified as to the events and circumstances underlying the Marable litigation. *See* R. Doc. 131. Other than attorneys and claims handlers involved in the Marable litigation, the witness list includes only three individuals associated with "Empire Truck Sales" and a broad designation for "[a]ny and all other individuals involved in the underlying matter forming the basis of this litigation." *See id.* at 2. A "catch-all" reference is not a sufficient identification of witnesses for purposes of the Court's pretrial instructions. Travelers' argument is further belied by the fact that it filed two untimely requests to supplement its witness and exhibit list to add these witnesses involved in the underlying Marable suit.

[99] *See, e.g.,* R. Doc. 173 at 2.

to collect on the default judgment in federal court, the default judgment was challenged as deficient and the malpractice plaintiff elected to settle the case for an amount less than the default judgment rather than see through a ruling on the deficiency challenge. *Id.* The *Braud* court found that there was a triable issue as to whether the attorney's alleged malpractice caused the malpractice plaintiff to settle. *Id.* The court reasoned that it "begs the question to argue that the settlement rather than the attorney's negligence caused the loss when that same negligence is allegedly the only reason that the Brauds were put in the position of having to consider settlement. *Id.* at 15.

The Court has trouble fitting *Braud*, decided in 1988 by an intermediate state court of appeals rather than the Louisiana Supreme Court, into the mainstream of Louisiana malpractice case law and there is reason to question the authority of the decision given the case's long and winding procedural posture.[100] Nonetheless, at most *Braud* supports the conclusion that a malpractice plaintiff in a situation like Travelers' can succeed by showing that Blue Williams' alleged negligence was the *sole* reason Travelers was in a position of having to consider settlement. In the underlying Marable litigation, there is no dispute that Travelers was facing an imminent jury trial in which the plaintiffs were seeking damages for Mrs. Marable's severe injuries in an amount far exceeding the settlement amount. Blue Williams had previously recommended that Travelers pursue settlement, albeit at a lower value possibly because the recommendation did not take into account the much higher price tag of the Marables' amended life care plan. Travelers scheduled the mediation with the Marables that resulted in settlement before the

---

[100] The malpractice action returned to the Fourth Circuit following remand to the trial court (apparently without defendant first filing a writ to the Louisiana Supreme Court) and was ultimately dismissed on prescription grounds by the Louisiana Supreme Court. *See* 89-CA-1876 (La. App. 4 Cir. 5/31/90); 562 So.2d 1116; *see also* 90-C-1358 (La. 3/11/91); 576 So.2d 466.

Marables even filed their motion to strike.[101] Simply put, Travelers clearly was considering settlement even before the timeliness of the rebuttal expert reports was raised, meaning that, unlike *Braud*, Blue Williams' alleged negligence was not the only reason Travelers was in the position of having to consider settlement.

With regard to Travelers' repeated assertion that a key inquiry regarding causation is Travelers' reasonableness in settling, such a reasonableness inquiry applies only where there is a dispute as to mitigation of damages or equitable estoppel. Recent state-court decisions have addressed a malpractice's plaintiff's reasonableness in deciding to settle a case; however, these decisions have occurred in the context of a malpractice plaintiff first having a final adverse judgment rendered against it and then deciding to bring a malpractice action rather than pursue an appeal of the adverse judgment. *See, e.g.*, *MB Indus.*, at 1179–80.[102] The Court is therefore not persuaded that Travelers' reasonableness in settling is relevant to its causation burden in this case.

In summary, the Court concludes Travelers has not raised any disputed issues of fact and, on the fact, there is no basis in Louisiana law to conclude that Travelers can meet its burden of establishing causation at trial. Because Travelers will not be able to establish all three prongs of the malpractice analysis, summary judgment for Blue Williams on the malpractice claim is appropriate.

---

[101] *See* R. Docs. 111-1 & 117-2; *see also* R. Docs. 111-20 & 111-22.

[102] S*ee also Colonial Freight*, 524 Fed.Appx. at 142 (before malpractice suit initiated, request for jury trial denied and bench trial completed); *Walker v. Harris*, 2011 CA 0141R (La. App. 1 Cir. 11/7/12) (unpublished) (before malpractice suit initiated, trial court issued adverse interlocutory judgment cutting off malpractice plaintiff's right to raise certain claims in underlying suit); *Brassette v. Exnicios*, 2011-1439 (La. App. 1 Cir. 5/14/12); 92 So.3d 1077, 1079 (before malpractice suit initiated, trial court granted adverse motion to limit damages as unopposed and malpractice defendant attorney unilaterally settled malpractice plaintiff's claims in underlying suit); *Amer. Reliable Ins. Co. v. Navratil*, 445 F.3d 402, 406 (5th Cir. 2006) (before malpractice suit initiated, "large jury verdict" rendered against malpractice plaintiff); *cf. Saussy v. Bonin*, 2012-1755 (La. App. 4 Cir. 9/4/13); 125 So.3d 1, 6 (without articulating "requisite burden of proof," *Saussy* court concluded malpractice plaintiff estopped from proving causation by settling before court ruled on issue that was only means of establishing damages).

**B. Did Blue Williams Commit Malpractice by Failing to Pursue Arbitration?**

For most all of the same reasons stated above, the Court concludes that Travelers has also failed to show that it can establish causation on its arbitration claim.[103] Again, the parties have failed to come forward with an applicable standard of care; however, even so, the Court is highly dubious of Travelers' unsupported contention that the service ticket's arbitration clause could actually have allowed Travelers to force the entirety of the Marable litigation into arbitration or that Blue Williams breached an applicable standard of care by not informing Empire or Travelers of its determination that the clause was not binding.[104] Though broad in scope, the arbitration clause in the service ticket at most indicates it would cover disputes between the customer ("KLLM – Wayne Marable") and Empire, not a claim by Wayne Marable's wife against Empire in her individual capacity.[105] Travelers has not come forward with evidence or argument that would lead the Court to think otherwise.

Travelers has not come forward with sufficient evidence to establish that Judge Griffin would have compelled arbitration based on the service ticket or that Blue Williams'

---

[103] The Court notes that the parties dedicated the majority of the arguments on this claim to the issue of peremption and Rule 15(c) relation back. By focusing on the relation back issue, the parties seemingly agree that a one-year peremption period would apply to Travelers' failure to arbitrate claim. *See* R. Docs. 111-2 at 28 & 117 at 28. The Court is not so sure. The very standard quoted by Blue Williams in its initial summary judgment memorandum indicates that a three-year peremption period applies "from the date of the act, neglect, or omission *when the malpractice is discovered after the date of the act, neglect, or omission.*" R. Doc. 111-2 at 28 (citing *Jenkins v. Starns*, 2011-1170 (La. 1/24/12), 85 So.3d 612, 626) (emphasis added). While Travelers' does not apparently dispute that a one-year peremption period applies, both the record and Travelers' underlying allegation that Blue Williams was negligent because it did not communicate the possibility of arbitration to Travelers support the conclusion that Travelers did not and likely could not have discovered Blue Williams' alleged negligence at least until it terminated Blue Williams and brought on replacement counsel. *See* R. Docs. 111-2 at 27–29 & 117 at 26–28; R. Doc. 117-9 at 37. Accordingly, it appears to the Court that a three-year peremption period likely applies to Travelers' failure to arbitrate claim. Given that Blue Williams was not hired by Travelers until November 22, 2012 and that Travelers raised its failure to arbitrate claim on January 22, 2015, Travelers brought the claim within three years of the date of the alleged misconduct. Furthermore, and given that the Court finds other grounds to dispose of Travelers' failure to arbitrate claim on summary judgment, at the very least the relation-back dispute is moot.

[104] *See* R. Doc. 117-33 at 3; R. Doc. 117 at 27 (citing R. Doc. 117-9 at 37 & 53).

[105] *See* R. Doc. 117-33 at 3.

alleged failure to pursue the possibility of arbitration was the cause of Travelers having to consider settlement. As such, the Court grants summary judgment for Blue Williams on Travelers' failure to arbitrate claim.

C. Did Blue Williams Breach its Contract with Travelers?

The Court summarily rejects Travelers' claim for breach of contract. The case law is clear that a breach of legal representation contract claim can stand over and above a general negligent representation claim only where the attorney expressly contracts for a specific result or does nothing after entering an attorney-client relationship. *See Matthews v. Stolier*, Civ. A. No. 13-6638, 2014 WL 5214738 at *9 n.41 & 42 (E.D.La. Oct. 14, 2014) (Milazzo, J.); *see also* B. *Swirsky & Co., Inc. v. Bott*, 91–CA-1889 (La. App. 4 Cir. 4/30/92); 598 So.2d 1281, 1282–83. The record is clear that Blue Williams did actually represent Travelers until termination, meaning Blue Williams may only be liable to Travelers for breach of contract if Blue Williams failed to satisfy an express warranty as to a specific result. Even assuming the contract cited by Travelers is valid,[106] it does not contain the sort of express warranty by Blue Williams that, if breached, could give rise to a contract action under Louisiana law. The cited contract states standards, not warranties, as to how and when Blue Williams should communicate with Travelers regarding newly produced documents and status updates.[107] Blue Williams' decision not to attack this claim at the motion to dismiss phase has no bearing on the Court's current determination that Travelers cannot state a claim for breach of contract as a matter of law.[108]

---

[106] The agreement is unsigned. R. Doc. 117-34.
[107] *See id.* at 7–8.
[108] Travelers' contention that Blue Williams somehow "lost" the ability to challenge Travelers' breach of contract claim by failing to raise a "failure to state a claim defense" or a 12(b)(6) motion to dismiss is unsupported by the record and the case law. Blue Williams undeniably *did* raise the defense in its answer that Travelers complaint fails to state a claim. *See* Rec. Doc. 11 at 1. And the case *Hill v. Hunt* case cited by Travelers only supports the conclusion that a defendant may lose its ability to file a 12(b)(6) motion to

Accordingly,

**IT IS ORDERED** that Blue Williams' motion for summary judgment[109] is **GRANTED** and the instant action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Blue Williams' second motion for summary judgment[110] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that all pending motions in limine[111] are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the pending motion to seal[112] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties' motions for leave to file supplemental and amended exhibit lists[113] are **DISMISSED AS MOOT**.

**New Orleans, Louisiana, this 26th day of July, 2016.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

dismiss by answering a complaint before presenting the defense. *See* Civ. A. No. 07-2020, 2010 WL 54756 at *2 (N.D. Tex. Jan 4. 2010)).

[109] R. Doc. 111.

[110] R. Doc. 171.

[111] R. Docs. 164, 178–81, 183–84, & 186.

[112] R. Doc. 182.

[113] R. Docs. 197, 209, & 218.